IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Vugo, Inc., Donald Deans,              )
Denise Jones, Glouster Brooks,         )
and Patricia Page,                     )
                                       )
            Plaintiffs,                )
                                       )
                                       )
      v.                               )   No. 17 C 864
                                       )
City of Chicago, an Illinois           )
municipal corporation                  )
                                       )
            Defendant.                 )
                                       )

Memorandum Opinion and Order

In this action, plaintiffs and plaintiff-intervenor (to
whom I collectively refer as "plaintiffs" unless otherwise
specified)[1] challenge the constitutionality of a City of Chicago
ordinance prohibiting commercial advertising on the interior or
exterior of "transportation network vehicles," i.e., vehicles
driven by independent contractors for companies such as Uber and
Lyft. Before me is the City's motion to dismiss both complaints—

---

[1] The original plaintiff was Vugo, a technology company offering
a tablet-based advertising platform that enables rideshare
drivers to display location-sensitive advertisements inside
their vehicles. In an amended complaint, Vugo added four
individual rideshare drivers as co-plaintiffs. *See* DN 15. In
addition, I later granted leave to intervene to another
rideshare driver who seeks to represent a class of similarly
situated individuals. *See* Order of 04/25/2017, DN 23. Where
clarification is necessary, I refer to the plaintiffs named in
the Amended Complaint as the "original plaintiffs" and to the
plaintiff-intervenor as the "intervenor."

1

which in all ways relevant to the instant motion assert identical claims—for lack of subject matter jurisdiction and failure to state an actionable claim. For the reasons that follow, I deny the motion.

I.

The complaints allege the following facts, which I take as true for present purposes. In May of 2014, the City passed an ordinance regulating "transportation network providers," "transportation network vehicles," and "transportation network drivers." (These are the entities, vehicles, and providers of a service commonly known as "ridesharing," the best-known of which, as noted above, are operated by the companies Uber and Lyft. *See Ill. Transp. Trade Ass'n v. City of Chicago*, 839 F.3d 549, 595 (7th Cir. 2016)). The ordinance provides that "[c]ommercial advertisements shall not be displayed on the exterior or in the interior of a transportation network vehicle." Chi. Mun. Code § 9-115-130. Plaintiffs allege that this restriction violates their rights under the First and Fourteenth Amendments of the federal constitution and equivalent provisions of the Illinois constitution.

Vugo is a technology company that "operates a software-only mobile media network that allows ridesharing drivers to display advertising and other media (such as news and entertainment) in their vehicles." Am. Cmplt. at ¶ 16. To use Vugo, rideshare

drivers download the Vugo "app" onto their personal tablets, then mount the tablets on a headrest of their front seats, facing the rear passengers. *Id*. at ¶ 20. Passengers can interact with the Vugo app during their ride, and the app displays ads based on route-specific and other individualized data. *Id*. at ¶¶ 22-23. Vugo earns advertising revenue for displaying the ads, a portion of which it pays to its drivers who use the app. *Id*. at ¶ 24.

Vugo alleges that the ordinance prevents it from operating its platform in Chicago, and the driver plaintiffs allege that it prevents them from displaying revenue-generating commercial advertisements on or in their vehicles. One driver—plaintiff, Patricia Page, alleges that after the ordinance took effect, she was ticketed for violating the commercial advertising ban because the vehicle she used as a transportation network vehicle displayed exterior advertising for her face-painting business. Am. Cmplt. at ¶ 40. All plaintiffs complain that the advertising ban violates their right to free speech and violates equal protection guarantees because drivers of taxis and ordinary passenger vehicles are not prohibited from displaying commercial advertisements.

II.

A. Plaintiffs' Free Speech Claims

The City asserts two bases for dismissing plaintiffs' claims under the First Amendment and Section 4 of the Illinois Constitution. First, it argues that none of the plaintiffs has standing to challenge the ordinance's ban on interior advertising, and that only plaintiff Page has standing to challenge the exterior ad ban. Second, it argues that plaintiffs have not stated an actionable constitutional claim under either the First or the Fourteenth Amendment.

The City's standing argument focuses on prudential standing—a concept not derived from Article III's case-or-controversy requirement and "similar to the requirement of Federal Rule of Civil Procedure 17 that every action must be prosecuted in the name of the real party in interest." *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 541 (7th Cir. 2012). Prudential standing principles ensure that litigants assert their own rights, not those of a third party. *Id*. Although the City frames its argument in jurisdictional terms and seeks dismissal on that basis pursuant to Rule 12(b)(1), prudential standing is not a jurisdictional requirement. *See id.* at 540 (objections to prudential standing can be waived if not preserved; court may raise lack of prudential standing *sua sponte* but is not required to do so). *See also Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 n. 5 (1984) ("prudential limitations add to the constitutional minima"

required for federal jurisdiction under Article III); *Singleton v. Wulff*, 428 U.S. 106, 113 (1976) (prudential considerations counsel caution by federal courts "before resolving a controversy, even one within their constitutional power to resolve"). The City does not challenge, nor do I perceive any basis for questioning, plaintiffs' Article III standing. Accordingly, my jurisdiction is secure regardless of whether the City's prudential standing argument has substantive merit. As explained below, it does not.

The City posits that because none of the plaintiffs (except for Page) alleges a desire "to communicate about products or services that they themselves offer for sale," or "creates or seeks to display its own advertising content," none has a protected First Amendment interest in the commercial speech the ordinance prohibits. In the City's view, plaintiffs' interest (again with the exception of Page) is purely an economic one—the desire to earn advertising revenue—that the First Amendment does not protect. Accordingly, the City argues, the only First Amendment interests potentially implicated by the ordinance belong to the advertisers and cannot be vindicated in a suit brought by plaintiffs.

The City relies heavily on *The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000), but neither that case nor the City's remaining authorities support its position. In *Pitt News*,

the Third Circuit held that a student newspaper lacked prudential standing to challenge, on behalf of its former advertisers, a state statute imposing criminal sanctions on businesses that advertised alcoholic beverages in school-published media. But the court concluded that the paper's alleged loss of advertising revenue as a result of the statute's enforcement amounted to a sufficient injury-in-fact to trigger Article III standing and proceeded to the merits of the newspaper's own First Amendment claim. So while the *Pitt News* court's lengthy discussion of prudential standing principles, including its analysis of seminal cases such as *Eisenstadt v. Baird*, 405 U.S. 438 (1972), *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980), and *Sec'y of State of Maryland v. Joseph H. Munson Co., Inc*., 467 U.S. 947 (1984), may provide a compelling rationale for prohibiting plaintiffs from asserting claims properly belonging to their advertisers, nothing in the court's analysis suggests that plaintiffs cannot assert their own First Amendment claims challenging the ordinance. To the contrary, the decision suggests the opposite, as the court held affirmatively that the newspaper had standing to assert its own First Amendment claim based on loss of advertising income.[2]

---

[2] Although the City does not challenge plaintiffs' Article III standing, it is worth noting that the driver plaintiffs' claim of an injury-in-fact resulting from the speech restraint here is

At all events, the City cites no authority for the proposition that the First Amendment protects a speaker's right to engage in commercial speech only when the speaker is the original author of the message, or when the message is about the speaker's own product or service. If that were the rule, the plaintiffs' claims in cases such as *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) (upholding billboard owners' First Amendment challenge to restrictions on off-premises signs), *Lavey v. City of Two Rivers*, 171 F.3d 1110 (7th Cir. 1999) (rejecting on the merits a billboard owner's First Amendment challenge to permit requirements), and *AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. Partnership*, 6 F.3d 867, 871 (2nd Cir. 1993) (acknowledging a cable operator's First Amendment right to "disseminate" speech but rejecting its claim on the merits), could all have been resolved on standing grounds.[3] So while the City characterizes plaintiffs as mere "conduits" for the protected speech of others, rather than as

arguably more compelling than the newspaper's claim in *Pitt News*. In *Pitt News*, the challenged restraint was a statute criminalizing the conduct of third-party advertisers, whereas here, the ordinance facially restricts the driver plaintiffs' own conduct.

[3] To be fair, objections to prudential standing can be waived, as noted above, and the issue does not appear to have been raised in connection with the First Amendment claims in either *Lavey* or *AMSAT Cable*. Nevertheless, it is the City that bears the burden of showing that plaintiffs' claims should be dismissed on this basis, and cases such as these, which proceeded to the merits of claims brought by plaintiffs in circumstances materially similar to those here, tend to suggest the opposite.

speakers who are communicating original content, that distinction is not dispositive of whether plaintiffs have enforceable First Amendment rights. *See City of Los Angeles v. Preferred Communications, Inc*., 476 U.S. 488, 494 (1986) (cable operator partakes of speech both by communicating original content and by exercising editorial discretion in retransmitting the communications of others). For these reasons, I conclude that plaintiffs have standing to assert their free speech claims.

Clearing the standing hurdle is just a threshold step, however. To survive the City's motion, plaintiffs must also allege plausibly that the ordinance's restriction on commercial advertising in or on transportation network vehicles fails the test established in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). Before turning to this question, however, I pause to explain why plaintiffs are mistaken in their view that a more stringent test than the one articulated in *Central Hudson* should apply.

Constitutional protection for commercial speech is of relatively recent vintage. Until 1976, the Court "adhered to the broad rule laid out in *Valentine v. Chrestensen*, 316 U.S. 52, 54, 62 S.Ct. 920, 921, 86 L.Ed. 1262 (1942), that, while the First Amendment guards against government restriction of speech in most contexts, the Constitution imposes no such restraint on

government as respects purely commercial advertising." *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 622 (1995) (internal quotation marks omitted). But the Court "changed course" in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*., 425 U.S. 748 (1976), when it rejected the argument that commercial speech lacks all First Amendment protection. *Id*.

In *Central Hudson,* the Court explained that while commercial speech, as a category, is not wholly excluded from constitutional protection, it is entitled to a lesser degree of protection than "core" First Amendment expression. 447 U.S. 563, 578. The Court thus established a framework for "intermediate scrutiny" to determine whether a restriction on commercial speech violates the Constitution. Under this framework, the government may freely regulate misleading commercial speech, or commercial speech that concerns unlawful activity. The government may regulate commercial speech that does not fall into either of these categories if: 1) the government has a substantial interest in support of the regulation; 2) the restriction directly and materially advances that interest; and 3) the regulation is narrowly drawn. *Id*. at 564-565.

In the years since deciding *Central Hudson*, the Court has "engaged in considerable debate about the contours of First Amendment protection for commercial speech," *Retail Digital*

*Network, LLC v. Prieto*, ---F.3d---, 2017 WL 2562047, at *6 (9th Cir. 2017). Indeed, "several Members of the Court have expressed doubts about the *Central Hudson* analysis and whether it should apply in particular cases." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001). Nevertheless, the Court continues to follow the *Central Hudson* framework and to apply its intermediate scrutiny standard in commercial speech cases, even where they involve content-based restrictions. *See id.* (evaluating state statute directed to cigarette advertising under the *Central Hudson* framework); *see also Retail Digital Network,* 2017 WL 2562047, at *6 (noting that the Supreme Court "repeatedly has declined...to fundamentally alter *Central Hudson*'s intermediate scrutiny standard"); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515-16 (7th Cir. 2014) ("[w]hatever the justification, the Court has not strayed from its commercial-speech jurisprudence despite calls for it to do so.").

Notwithstanding the Court's ongoing adherence to *Central Hudson*'s intermediate scrutiny standard, plaintiffs argue that the ordinance is subject to strict scrutiny because it establishes content-based restrictions. Plaintiffs' view rests on the misguided belief that restrictions on non-misleading commercial speech that does not concern unlawful activity are *per se* content-based, and thus subject to the higher level of

scrutiny the Court applies to such restraints. Plaintiffs argue that *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015), and *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011), support this view.

In *Reed*, the Supreme Court struck down a town code that distinguished among "Temporary Directional Signs" (defined as signs conveying "the message of directing the public to church or some other 'qualifying event'"), "Political Signs" ("designed to influence the outcome of an election"), and "Ideological Signs" (intended to communicate "a message or ideas" not otherwise defined) among other categories, and that imposed different restrictions on each category. 135 S. Ct. at 2227. The Court explained that the challenged code "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter. Ideological messages are given more favorable treatment than messages concerning a political candidate, which are themselves given more favorable treatment than messages announcing an assembly of like-minded individuals. That is a paradigmatic example of content-based discrimination." *Id.* at 2230.

In *Sorrell*, the Court struck down a statute enacted by the state of Vermont prohibiting the disclosure by certain healthcare entities of specific information—the prescribing practices of doctors—for marketing purposes. The Court examined

the text of the statute and observed that it "gives possessors of the information broad discretion and wide latitude in disclosing the information, while at the same time restricting the information's use by some speakers and for some purposes, even while the State itself can use the information to counter the speech it seeks to suppress." 564 U.S. at 580. The Court concluded, "the State has burdened a form of protected expression that it found too persuasive. At the same time, the State has left unburdened those speakers whose messages are in accord with its own views." *Id.*

The ordinance at issue in this case cannot reasonably be compared to the legislation in either *Reed* or *Sorrell*. On its face, the ordinance is a broad ban on commercial advertising that applies in a narrow medium: transportation network vehicles. The ban does not distinguish among products or services advertised, nor does it single out certain speakers, subject matters, or purposes for differential treatment. Plaintiffs seize on isolated statements, in *Reed* and *Sorrell* respectively, that laws regulating speech based on its "function or purpose" are content-based, 135 S. Ct. at 2227, and that a statute that "disfavors marketing" restricts "speech with a particular content," 564 U.S. at 564, to argue that *any* governmental restraint on commercial speech, unless directed to misleading speech or to speech concerning an unlawful activity,

is *per se* content based and thus subject to strict scrutiny. No court has interpreted *Reed* or *Sorrell* so broadly, however, and the decisions themselves do not suggest that the Court intended such a sweeping shift in the law. Indeed, notwithstanding its statement in *Reed* that "function or purpose" distinctions are content based, the Court ultimately rested its decision on the ground that the challenged code "single[d] out specific *subject matter* for differential treatment." 135 S. Ct. at 2230 (emphasis added). And while the Court applied "heightened" scrutiny to the commercial speech restrictions in *Sorrell*, it is far from clear that this standard differed from the one *Central Hudson* requires.[4]

For the foregoing reasons, I conclude that the ordinance must be analyzed under the *Central Hudson* framework and turn to

---

[4] It is true that Justice Breyer, in his concurring opinion in *Reed*, cited *Sorrell* for the observation that "the Court has applied the heightened 'strict scrutiny' standard even in cases where the less stringent 'commercial speech' standard was appropriate." 135 S. Ct. at 2235 (Breyer, J., concurring in the judgment). Nevertheless, the Seventh Circuit does not appear to view *Sorrell* as requiring a higher standard than *Central Hudson*. *See, e.g.*, *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 604 (7th Cir. 2012) (implicitly applying the *Central Hudson* framework to explain that "[i]n commercial-speech cases, the government must establish that the challenged statute 'directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.'") (quoting *Sorrell* at 2667-68); *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (holding that intermediate scrutiny applies to commercial speech restrictions, citing *Sorrell* and other cases). Meanwhile, the Ninth Circuit has affirmatively held that "*Sorrell* did not modify the *Central Hudson* standard." *Retail Digital Network, LLC v. Prieto*, ---F.3d---, 2017 WL 2562047, at *6 (9th Cir. 2017).

the question of whether plaintiffs' allegations and other materials I may consider at the pleadings stage establish that it satisfies that standard. As an initial matter, plaintiffs argue that whether the ordinance passes the *Central Hudson* test cannot be determined at the pleadings stage because the City must support its arguments with evidence. While it is true, as plaintiffs point out, that where a governmental speech restraint implicates First Amendment interests, "the State bears the burden of justifying its restrictions," *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989), the government may invoke "common-sense judgment" as well as the history and text of the legislation, and need not, in all cases, offer "studies, statistics or other empirical evidence" to carry its burden. *Act Now to Stop War and End Racism Coalition and Muslim American Society Freedom Foundation v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017). *See also Second Amendment Arms v. City of Chicago*, 135 F. Supp. 3d 743, 756 (N.D. Ill. 2015)("the plain text of a law, its legislative history, and simple common sense could allow a district court to dismiss a facial challenge to a provision restricting commercial speech at the pleading stage.") (citing *Fla. Bar*, 515 U.S. at 628). Accordingly, I decline plaintiffs' invitation to deny the City's motion out of hand on the ground that the City's arguments cannot be entertained on a motion to dismiss.

14

As noted above, the first prong of the test requires me to ascertain whether the City has a substantial interest in support of the ordinance. In this connection, the City asserts three interests: traffic safety, aesthetics, and passenger comfort. Plaintiffs concede that the first two are substantial government interests, so I need not address them further. Plaintiffs disagree, however, that the City has a substantial interest in "passenger comfort." And while I agree with the City that even a single substantial interest is sufficient to satisfy the first prong of the analysis, it is not obvious that the interests plaintiffs concede support the ordinance's provision banning *interior* advertising. Accordingly, I consider whether passenger comfort is indeed a substantial government interest.

The City argues that passenger comfort is a substantial interest in the context of speech directed to a "captive audience." *Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974) (upholding ban on political advertisement in public transportation); *see also Anderson v. Milwaukee County*, 433 F.3d 975, 980 (7th Cir. 2006) (upholding regulation prohibiting distribution of literature to "captive audience" riding city buses). Plaintiffs argue that the City has no legitimate interest "in protecting people from hearing certain messages based on their content," but this argument rests on the misguided premise that the ordinance establishes impermissible

content-based speech restrictions. As explained above, the ordinance is not a content-based restriction simply because it is directed to commercial speech. Accordingly, I conclude that the City's long-recognized interest in protecting the public, and particularly a captive audience, from unwanted intrusions extends to safeguarding the comfort of passengers riding in vehicles on the public way.

Where the City's motion falls short, however, is on the second and third prongs of the *Central Hudson* analysis: whether the ordinance directly and materially advances the City's asserted interests, and whether it is "narrowly drawn" to serve those interests. First, while I am persuaded that the City generally has an interest in protecting captive audiences from unwanted intrusion, I cannot determine from the pleadings alone that rideshare passengers are sufficiently "captive" to interior advertising to justify its wholesale ban under the ordinance. For example, the complaint describes Vugo's app as "interactive," which suggests that passengers may be able to turn off any messages they prefer not to see or to hear. Yet, the ordinance prohibits interior commercial advertising in all formats, regardless of how easy or difficult it may be for passengers simply to turn it off, and thus is arguably overbroad in that respect. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210-11 (1975) ("the burden normally falls upon the viewer

to avoid further bombardment of (his) sensibilities simply by averting (his) eyes."). Without further factual development, I am not persuaded that the City's blanket ban on interior commercial advertisements in rideshare vehicles must be sustained as applied to plaintiffs' proposed speech.

In addition, while there is no dispute that the exterior advertising ban limits the total quantum of potentially distracting or aesthetically unpleasant advertising on the road, it is not obvious from the pleadings that the ordinance's restrictions have a material effect on either traffic safety or roadway appearance, and the City articulates no reasoned basis for concluding that it does so. While the City states correctly that it "may justify its restriction by reference to the text of the enactment, history, logic, or common sense," Mem. at 4, it cites neither the text nor the history of the ordinance in support of its *Central Hudson* analysis, while its "commonsense" arguments reduce largely to the truism that a limitation on commercial advertisements results in fewer commercial advertisements and to speculation that the City "may reasonably conclude that ridesharing vehicles will be on the road more often than purely private vehicles" and thus present a greater threat to the City's interests. Mem. at 10. These arguments are not persuasive. To justify the ordinance's speech restriction, the City "must demonstrate that the harms it recites are real

and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 771 (1993).

The City relies heavily on the Court's analysis in *Metromedia*, but that case was decided on cross-motions for summary judgment after "extensive discovery" and does not support dismissal here, in the absence of a factual record. 453 U.S. at 497. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984), and *Supersign of Boca Raton, Inc. v. City of Fort Lauderdale*, 766 F.2d 1528 (11th Cir. 1985), also cited by the City, were likewise decided on a factual record. In short, the City has not shown, on the pleadings, that the ordinance directly advances its substantial interests or that it is narrowly tailored to serve those interests. Accordingly, its motion to dismiss Count I of plaintiffs' complaints is denied.[5]

## B. Plaintiffs' Equal Protection Claims

In Count II of their complaints, plaintiffs assert that the ordinance violates the equal protection principles enshrined in the federal and Illinois constitutions because it treats those "seeking to advertise in transportation network vehicles

---

[5] The Seventh Circuit has explained that "the Constitution of the State of Illinois protects an individual's right to free speech only to the same extent that such speech is protected by the Constitution of the United States." *Trejo v. Shoben*, 319 F.3d 878, 884 n. 2 (7th Cir. 2003) (emphasis added). Accordingly, I need not separately address plaintiffs' free speech claim under state law.

differently from people seeking to advertise in similarly situated vehicles – taxicabs." Am. Cmplt. at 55. The City argues that economic regulations such as the ordinance are evaluated under the rational basis test, which carries a strong presumption of validity. The City cites *F.C.C. v. Beach Commc'ns, Inc*., 508 U.S. 307, 313-14 (1993), in which the Court held that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Plaintiffs do not dispute this proposition, but they argue that because the ordinance implicates First Amendment interests, the classification requires heightened scrutiny.

Plaintiffs cite *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 94-95 (1972), *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638, 652 (1943), and other cases in support of heightened scrutiny for their equal protection claim, but all of these cases involve "core" First Amendment speech, not commercial speech. And in *Friedman v. Rogers*, 440 U.S. 1, 17 (1979), the Court applied rational basis review to an equal protection challenge that arose in the context of a commercial speech restraint. Still, it is fair to say that the Court's

commercial speech jurisprudence has evolved since *Friedman* toward greater protection for commercial speech, and several courts have more recently held that equal protection claims involving restrictions on commercial speech should be subject to the same intermediate level of scrutiny that applies to First Amendment claims under *Central Hudson*. *See*, e.g., *Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir. 2001) ("[b]ecause regulation of commercial speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review") (*citing R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992)); *see also Am. Acad. of Implant Dentistry v. Parker*, No. A-14-CA-191-SS, 2014 WL 2808610 (W.D. Tex. Jun. 20, 2014) (observing a "significant overlap between the First Amendment claim based on commercial free speech and the equal protection claim also based on commercial free speech," and finding "no compelling reason not to allow the equal protection claim to proceed alongside the First Amendment claim when they will likely involve litigation of the same issues.")

The City does not appear to dispute that heightened scrutiny should apply to plaintiffs' equal protection claim if their related free speech claim is allowed to proceed. Instead, the City assumes that plaintiffs' First Amendment claim will not

survive its motion and argues that with no protected speech interest at stake, the ordinance is subject only to rational basis review (which plaintiffs do not dispute it survives), *see* Reply, at 16, 17 (citing *Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 709, 719 (7th Cir. 2015), and *St. John's United Church of Christ v. City of Chicago*, 401 F. Supp. 2d 887, 901 (N.D. Ill. 2005)), and that even if intermediate scrutiny applies, the ordinance survives for the same reasons it survives plaintiffs' First Amendment challenge under *Central Hudson*. Because I am not persuaded, however, that plaintiffs' First Amendment claims fail as a matter of law under *Central Hudson*, neither argument establishes the City's entitlement to dismissal of plaintiffs' equal protection claim.

III.

For the foregoing reasons, the City's motion to dismiss is denied.

**ENTER ORDER:**

_Elaine E. Bucklo_

**Elaine E. Bucklo**
United States District Judge

Dated: August 9, 2017